BOSTON & M. R. R. v. BENSON.

(Circuit Court of Appeals, First Circuit. June 11, 1913.)

No. 1,012.

1. TRIAL (§ 233*)—INSTRUCTIONS—REFUSAL OF REQUESTS—DISTINCT ISSUES.

Sweeney v. Irving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. —, applied with reference to requests for instructions to juries, each of which covers two distinct matters, one of which might be of effect and the other of no effect.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 527–530; Dec. Dig. § 233.*]

2. MASTER AND SERVANT (§ 287*)—ACTION FOR DEATH OF SERVANT—QUESTIONS FOR JURY.

In an action under Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322), for the death of a railroad employé, who was killed while inspecting cars. under the orders of a fellow servant, whose duty it was to instruct him in the work and its dangers, evidence *held* sufficient to warrant the submission to the jury of the question whether the accident was due to the negligence of such coemployé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. § 287.*]

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action at law by Mary J. Benson, administratrix, against the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank J. Sulloway, of Concord, N. H. (Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., on the brief), for plaintiff in error.

Henry F. Hollis, of Concord, N. H. (Hollis & Murchie, of Concord, N. H., on the brief), for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This is a suit for damages under the Employer's Liability Statutes of the United States, with a verdict and judgment for the plaintiff, followed by this writ of error by the defendant. It is convenient in this opinion to call the plaintiff below still the plaintiff, and the same as to the defendant below. The allegations of the declaration to which we need refer are as follows:

"That said plaintiff's intestate, said Henry D. Sumner, deceased, was then and there in the employ of said defendant corporation as a car inspector at said Windsor, and was employed by said defendant in said capacity in such interstate commerce; that said defendant was then and there operating between said Windsor and said Claremont Junction a certain freight train, and said train was then and there engaged in carrying interstate commerce; that said defendant was then and there employing as a car inspector at said Windsor a certain man named Charles Coleman, whose duty it was to instruct said deceased how properly to do his work, and to warn said deceased of the dangers incident to such work; that said defendant was then and there em-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ploying a certain train crew on said train at said Windsor, whose duty it was to handle said train in a reasonable and careful manner, and with due regard to the safety of said car inspectors; that said deceased was then and there employed as a car inspector as aforesaid on the defendant's said railroad at said Windsor, and while so employed and in the exercise of due care he was bruised and injured by reason of a fall from the top of one of the cars of said train, said fall being caused (1) by the failure of said Coleman to properly instruct said deceased how properly to do his work; (2) by the failure of said Coleman to warn said deceased of the dangers of such work; and (3) by the failure of said train crew to handle said train in a reasonable and careful manner, and with due regard to the safety of said car inspectors, by reason of which negligence on the part of said defendant, its officers, agents, and employés said deceased received injuries as aforesaid, from which he died on the 20th day of May, 1910."

There was a certain diffuseness in the discussions before us and in the briefs; but under the rules the case comes down to the assignment of alleged errors, as follows:

"(1) The District Court erred in refusing to grant the defendant's request for instructions in respect to the negligence of Car Inspector Coleman, and in submitting the question of his negligence to the jury; the defendant's request in this respect being as follows:

" '1. The specific negligence alleged by the plaintiff is as follows:

" '(1) An alleged order by Car Inspector Coleman to the plaintiff's intestate to get on the train, and

" '(2) The alleged failure of Brakeman Clough to warn the plaintiff's intestate at the time he made the cut.

" 'You are instructed that there is no evidence in this case to warrant a finding that Coleman ordered Henry D. Sumner to go on top of the cars, or that anything which was said by Coleman to Sumner was negligence on the part of Coleman, and, further, there is no evidence that anything said by Coleman to Sumner was a legal cause of the accident, and you will therefore exclude from your consideration the conduct of Inspector Coleman.'

"(2) The District Court erred in refusing to charge the jury as requested by the defendant in respect to the assumption of risk by the plaintiff's intestate, which request was as follows:

" 'The plaintiff is bound to prove that the danger resulting in his injury, if you find there was such a danger, was not known to the deceased, and in the exercise of ordinary care would not have come to his knowledge. If you believe that the risk of injury from the separation of the train in the manner proved in this case was an ordinary risk of Mr. Sumner's employment, and was known, or should have been known, and appreciated by him, you are instructed that Mr. Sumner assumed the risk of injury from this cause, and you will return a verdict for the defendant.'

"(3) The District Court erred in admitting in evidence against the defendant's exception the following rule:

" 'Car Inspectors.

" '941. They must see that freight cars are in good running order and fully supplied with all requisites, and that the running gear, brake appliances, and draw rigging are in good condition and work properly; that the cars are not loaded beyond their safe capacity; that the load is properly distributed and does not exceed the authorized height and width; and must not permit a car to be taken out by a train unless they know positively that it is in good condition for service. Should a car need repairs which will occupy much time, it must be promptly carded for set-out, and conductor, agent, or yardmaster notified.' "

It is true that these extracts are preceded by phraseology of a generic character, which, very likely, the parties had in view in their discursive arguments before us; but this general phraseology is lim-

ited by the closing words, "the defendant's request in this respect being as follows."

We will refer first to 3, relating to the introduction of the rule about car inspectors. We are wholly unable to perceive how the introduction of this rule was in any way prejudicial to the defendant or advantageous to the plaintiff; and the record is absolutely silent on this point, no reason for the exception being given. All that appears about its introduction is at the close of the defendant's bill of exceptions, where it is merely said that this rule "was introduced in evidence against the defendant's exceptions." Inasmuch as this assigns no reason on which to base the exceptions, and fails to explain why the evidence was offered, clearly the exception is not valid; but we will, nevertheless, add that we are unable to see either prejudice or advantage, as we have stated. Therefore this portion of the assignment of errors fails to be of any effect.

[1] Turning next to what is covered by paragraph 2: This request contained two distinct matters, one of which might be of effect and the other of no effect. The latest expression of the inefficiency of this double form of request is found in Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. ——, decided by the Supreme Court on April 7, 1913. The last part relates to the ordinary risks of the employment; but the real basis of the action was the negligence of the coservant of the intestate, which is not an ordinary risk which can be in any way covered by the rule as to assumption of risk, unless possibly where there is evidence that the coservants are usually negligent in a certain specified way, with which fact the party injured was acquainted, and the record absolutely fails to offer any proofs of this character.

The first part of the requested instruction fails for substantially the same reason. Evidently in its last part the defendant had in view the hazards of inspectors connected with the usual method of making up trains at railroad terminals; but as to either aspect of the request the fact we have stated still remains, that the negligence was not in the method of making up trains, but in the negligence of a co-servant, which, so far as the case is concerned, may have been purely incidental and exceptional. In this connection it is to be observed that the court did in its charge touch upon the assumption of risk, and suggested that an employé might assume the risks incident to the prudent management of the railroad and its trains, and continued that the employé does not assume the risk of the mismanagement of coservants. The court does not seem to have been requested to follow out these suggestions as applicable to this case; but, if it had been, the result would have been as we have said. There was no evidence justifying a verdict that the intestate had assumed the risk of mismanagement by coservants, or knew anything in reference to so incidental and exceptional a thing, under the peculiar circumstances.

[2] With reference to the first alleged error assigned, a reference is made to Brakeman Clough; but it is only a reference, and not followed out. Therefore the whole turns on the so-called alleged

order by Coleman; and the request was made that the jury be instructed that there was no evidence warranting the jury to find that Coleman gave an order to the intestate, as claimed by the plaintiff, and no evidence that anything said by Coleman was a legal cause of the accident. On the other hand, whatever might be our impressions about the effect of the evidence, there is sufficient in the record to so far sustain the verdict of the jury upon that point that we cannot disturb it. Coleman was called by the plaintiff and questioned about the custom as to climbing upon the cars, as the intestate did in this case; and he stated that there were circumstances under which the car inspectors were required to go up on the cars in connection with the brakes, that he could not say whether the intestate had ever done this, and that there was no other occasion for the inspectors climbing the cars except for their own convenience. He admits that the intestate was so far inexperienced that he did not permit him to go alone to attend to a minor matter ordinarily attended to by a single inspector, but went to show him how to do it; also, that the intestate was under his (Coleman's) orders, as he understood it. He also admits that he and the intestate started back towards the rear end of the train as the train was backing up, and that he (Coleman) jumped on the north end of a car, and told the intestate there was a good chance to ride on the other end, although he said he did not get on that particular end, but waited a car or two, and then went up on top. He also admits that he saw him on the top of the car before he fell, although he did not notice what precise position he took on the top of the car; that he did not call to him or give him any orders with reference to holding his position on the top of the car; and that he heard no one give him any orders; and that he did not know that the intestate knew what were the signals for stopping and cutting off a car, which stopping and cutting off were probably the cause of his falling and subsequent death. Under the circumstances, while the expression used by Coleman might be held to be of a doubtful character with reference to his having "a good chance to ride on the other end of the car," yet, taking the whole together, including the fact that Coleman saw him on top of the car and gave him no warning, it cannot be said that the jury was wrong in finding that Coleman ordered the intestate on top of the car, or, at least, that the intestate fairly understood him as so ordering him, if it so found. Bearing in mind the relations between Coleman and the intestate, and the rapidity with which work is frequently done at railroad terminals, and the apparent acquiescence of Coleman in the fact that the intestate did go on top of the car, no court would be justified in revising the finding of a jury on this proposition.

Consequently we are unable to determine that any of the alleged errors assigned by the defendant were in fact errors, and the proceedings of the District Court must be affirmed.

The judgment of the District Court is affirmed, with interest, and the costs of appeal.